IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEVEN and CRYSTAL ARLEN, | ) | Case No. 10-21980-DRD-13 |
| | ) | |
| Debtors. | ) | |

and

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALBERT and DEBBIE CORMACK, | ) | Case No. 10-22371-DRD-13 |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM OPINION**

These matters are before the Court on the Debtors' own objections to their Chapter 13 plans, formulated after the Court granted the trustee's motions to deny confirmation of previous versions of their Chapter 13 plans. The issues are: (1) whether a Chapter 13 plan which proposes no payment to any creditors, secured or unsecured, and satisfies only the fees of Debtors' counsel is filed in good faith; and (2) whether Debtors whose income consists exclusively, or almost exclusively, of Social Security benefits are bound by the applicable commitment period and must remain in Chapter 13 for the periods specified in § 1325(b)(4). This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). These are core proceedings, pursuant to 28 U.S.C. § 157(b)(2)(L), which this Court may hear and determine and in which it may issue a final order. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I overrule the Debtors' objections to

their Chapter 13 plans. The Court holds that a Chapter 13 plan, the exclusive purpose of which is to pay the administrative fees of the proceeding and which makes no payment to unsecured or secured creditors, is inconsistent with the spirit and purpose of Chapter 13 and is therefore not filed in good faith. The Court also holds that the applicable commitment period requires below median Chapter 13 debtors to remain in Chapter 13 and make payments over a period of 36 months notwithstanding the fact that their disposable income (and projected disposable income) are negative because their income, or a substantial portion thereof, derives from benefits received under the Social Security Act.

## I. FACTUAL BACKGROUND

The facts cited below are taken from pleadings filed on the Court docket of which the Court takes judicial notice pursuant to the consent of the parties. Debtors Steven and Crystal Arlen filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 27, 2010. Their Form 22C shows that they are below median. In fact, it shows no income at all for the apparent reason that, during the six-month period prior to filing, Debtors' only income was from Social Security, which is excluded from the calculation of current monthly income, and therefore from disposable income, pursuant to the definition contained in § 101(10A). Schedule I, on the other hand, shows total income of $1,537.00, of which $1,098.00 is Social Security.[1] Debtors' schedule of expenses, Schedule J, shows expenses of $1,338.00 for a net monthly income of $199.00. Debtors' original plan proposed a payment of $200.00 a month and specified that nonpriority unsecured creditors were to receive no distribution. That plan also indicated that the debt secured by Debtors' residence was current. In other words, there was no prepetition

---

[1]The remaining $439.00 comes from a source designated only as "Umum."

2

arrearage, and the continuing monthly payments were to be paid by the Debtors directly. The collateral of the Debtors' only other secured creditor was to be surrendered. No payments were proposed to any priority unsecured creditors for the reason that there were no such creditors. Accordingly, the only debt paid by the plan, which the trustee estimated would run for approximately 15 months, was $2,584.00 in attorney's fees, the balance of a $3,000.00 fee after deducting the sum of $416.00 paid directly to counsel by the Debtors prior to the filing. The trustee objected to the confirmation of this plan on the grounds it was not filed in good faith and violated the provisions of § 1325(b) regarding the commitment of disposable income. The Court sustained that objection and the Debtors filed an amended plan. The only difference between the amended plan and the original plan is that the amended plan is a so-called "base" plan designed to run for a period of 36 months. Debtors have objected to their own plan, arguing their prior plan should have been confirmed by the Court and it therefore should have been unnecessary for them to make this amendment.

Albert and Debbie Cormack filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 18, 2010. Their Form 22C reflects income of $1,762.00 of which $1,011.00 derives from Social Security[2] which places the Debtors below the applicable median income for a family of similar size in the state of Missouri. Schedules I and J show income of $1,762.00 and expenses of $1,611.00 for net monthly income of $151.00. Their original plan proposed to pay the trustee the sum of $150.00 per month. Debtors proposed to surrender a vehicle and pay no dividend to unsecured creditors. According to the plan, there are no other secured creditors

---

[2]Other sources of income include: $517.00 contributed by unspecified other persons and $234.00 from a source designated only as "Tan F."

and no priority unsecured debt. Once again, the only person or entity receiving payment under the plan is Debtors' counsel who is to receive the sum of $100.00 per month toward the balance of a $3,000.00 fee, $416.00 of which was paid before filing.

As in the Arlen case, the trustee filed a motion to deny confirmation of the plan alleging that it was filed in bad faith and violated the provisions of § 1325(b) in that it would run for a period of only 19 months and therefore not commit all the Debtors' disposable income to payment of their unsecured creditors for the applicable commitment period. The Court sustained this objection and ordered the Debtors to file an amended plan. The Debtors' amended plan is in all respects identical to their original plan with the exception that it is a base plan designed to run for the 36-month applicable commitment period. The Debtors have objected to their plan contending that their original plan should have been confirmed by the Court and it was therefore unnecessary for them to amend it to provide for a minimum term of 36 months.

## II.  DISCUSSION

### A.  Good Faith

Section 1325(a)(3) of the Bankruptcy Code provides that the Court may not confirm a Chapter 13 plan unless it was proposed in good faith. Although the Bankruptcy Code does not provide a definition of good faith in the Chapter 13 context, the Court is not entirely without guidance. The Eighth Circuit has adopted a standard and identified a number of factors for the Court to consider in determining whether a plan is filed in good faith. Although the contours of the good faith analysis have evolved as a result of amendments to the Code, including amendments made in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act, it remains true that the Court should consider the totality of the circumstances. *In re Estus*, 695

F.2d 311 (8th Cir. 1982); *In re White*, 255 B.R. 737, 742 (Bankr. W.D. Mo. 2000); *In re Montry*, 393 B.R. 695 (Bankr. W.D. Mo. 2008). In *Estus*, the Eighth Circuit identified 11 factors to consider.[3] While those factors are helpful in assessing good faith, the key inquiry is whether a plan violates the spirit and purpose of Chapter 13. *Educational Assistance Corp. v. Zellner (In re Zellner)*, 827 F.2d 1222, 1227 (8th Cir. 1987); *Estus*, 695 F.2d at 316; *In re Paley*, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008). The purpose of Chapter 13 is to enable debtors to "adjust their debts", reorganizing their financial affairs while servicing debts out of future income pursuant to a plan. *Paley*, 390 B.R. at 59; *In re Buck*, 432 B.R. 13, 21 (Bankr. D. Mass. 2010).

The Court previously expressed its reservations about Chapter 13 plans the sole purpose of which was to pay counsel fees. *In re Rush*, 387 B.R. 26, 35 n. 10 (Bankr. W.D. Mo. 2008). In *Rush*, the Court was not called upon to rule on the good faith question as it was not raised. It has been here and the Court does so, joining the majority of courts which have considered the question and have held that a plan which proposes no payment to any creditor and satisfies only the administrative expenses caused by the filing of the petition is inconsistent with the purpose and spirit of Chapter 13 and is not in good faith. In so doing, the Court agrees with the holding of Judge Venters in *In re Montry*, 393 B.R. 695 (Bankr. W.D. Mo. 2008). Judge Venters relied in substantial part on the decision in *Paley* in which the court sustained a good faith objection to a plan paying only the debtors' attorney's fees, observing that "the Debtors are not adjusting

---

[3]Those factors are (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee. *In re Estus*, 695 F.2d at 317.

anything, much less debt; they are canceling and eliminating the claims of creditors by simply paying their attorneys." *Paley*, 390 B.R. at 59. Debtors here criticize Judge Venters' analysis in *Montry* for not commenting on each of the numerous factors the Eighth Circuit has suggested the Court consider in determining good faith. However, as the court in *Paley* observed in responding to a similar contention, the court need not perform an exhaustive analysis of the factors because "a plan whose duration is tied only to payment of attorneys' fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Id.* Numerous other courts considering the question have reached the same conclusion – a Chapter 13 plan that pays only fees of counsel is inconsistent with the spirit and purpose of Chapter 13 and is not filed in good faith. *In re Dicey*, 312 B.R. 456, 460 (Bankr. D.N.H. 2004); ("Congress did not create Chapter 13 as a vehicle solely for the payment of attorneys' fees."); *In re Lehnert*, 2009 WL 1163401 (Bankr. E.D. Mich.); *In re Sanchez*, 2009 WL 2913224 (Bankr. D.N.M.); *Buck*, 432 B.R. at 22 n. 14 (noting that the overwhelming majority of the courts that have addressed this question agree that attorney fee only Chapter 13 plans fail to meet the good faith requirement § 1325(a)(3)).

  These cases are little more than disguised Chapter 7 proceedings. Utilizing Chapter 13 in this fashion blurs the distinctions between the two chapters and the various differences in their scope and purpose as reflected by the different applicable statutory provisions. *Paley*, 390 B.R. at 59-60. There is no evidence that the Debtors are not eligible for Chapter 7 relief. Even if they were not eligible for Chapter 7 relief by reason of having obtained a discharge in a prior Chapter 7 case within eight years prior to the filing of these cases, permitting the Debtors to confirm a plan in these cases which does nothing more than would be done in a Chapter 7 case,

permits them to circumvent those restrictions on successive discharges. *Montry*, 393 B.R. at 696-697. Debtors contend that Congress has expressed a policy preference for Chapter 13 proceedings, citing all the things which Debtors can accomplish in Chapter 13 such as reinstating mortgage defaults, restructuring automobile loans and paying priority tax claims. They suggest this should inform the Court's decision on the good faith issue. That preference assumes that Chapter 13 debtors are accomplishing one or more of those things and perhaps paying something to their non-priority unsecured creditors. These Debtors are not. Debtors cite no authority for the proposition that Congress or the courts have expressed a preference for paying counsel fees over time in Chapter 13, rather than paying half as much in a lump sum prior to the filing of the petition.

It is difficult to understand how a Chapter 13 plan under these circumstances benefits anyone other than counsel. The fees charged by counsel in this case are approximately twice what would be charged for Chapter 7 proceedings for these Debtors. *See Montry*, 393 B.R. at 697 n. 10. Instead of getting their discharges within four to six months as they would in a no asset Chapter 7 proceeding, these Debtors would not get a discharge, even under the design of the original plans, for approximately one and one-half years. And, of course, that discharge is less comprehensive than in Chapter 7. In fact, it is difficult to understand why debtors who are not facing the loss of property (or are not seeking to retain it) and whose income consists solely of Social Security would need to resort to bankruptcy protection at all. Since their Social Security income is exempt from collection efforts by creditors, they are essentially judgment proof. In their post-hearing submission, Debtors point out that attorneys' fee obligations are dischargeable and may not be collected after the case and that Debtors' counsel may not obtain

7

payment from the estate in a Chapter 7 case. These facts, they argue, coupled with Debtors' inability to make a lump sum payment prior to filing in the total amount of counsel's requested fees, warrants permitting attorney fee only Chapter 13 plans. Even if that argument provided a policy justification for such plans, the record is devoid of any evidence that makes the argument applicable to these Debtors. Specifically, Debtors produced no evidence that they were unable to make a lump sum payment for the fees which would be demanded by Chapter 7 counsel. Neither is there any evidence that the Debtors were facing any exigency, such as the loss of a home or a car, which would render them unable to save the amount of counsel fees over a period of time. As a matter of fact, the record shows precisely the opposite.

Debtors suggest that *Montry* and other similar cases are distinguishable based on the fact that their income is derived exclusively from benefits under the Social Security Act. Debtors also contend that the holding in the recent case of *Fink v. Thompson (In re Thompson)*, 439 B.R. 140, (8th Cir. B.A.P. 2010) prohibits this Court from denying confirmation of their plans on good faith grounds. In *Thompson*, the Eighth Circuit Bankruptcy Appellate Panel held that the court could not deny confirmation of a Chapter 13 plan based solely on the fact that the debtors had significant Social Security income which they did not propose to make available to unsecured creditors pursuant to the plan. The Court disagrees. First, in several of the cases cited above in which the courts denied confirmation of attorney fee only Chapter 13 plans for lack of good faith, the debtors had substantial Social Security income. *See, e.g., Paley*, 390 B.R. at 55-56; *Sanchez*, 2009 WL 2913224 at *1. Second, there is no contradiction between saying that debtors may not be convicted of bad faith for failure to pay more to their unsecured creditors based on not committing Social Security income to the plan and finding bad faith based upon the debtors'

failure to pay anyone anything, in contravention of one of the principal purposes of Chapter 13. In other words, the question here is not whether unsecured creditors should be paid more, but whether it is appropriate to pay nothing to any creditor. It is important to understand that the reason Debtors' plans do not pay anything to unsecured creditors is not because of the amount of the Debtors' monthly plan payment or their failure to pay as much as their Schedules I and J indicate that they are able to pay. Rather, it is because the plans have been constructed specifically to pay no dividend to unsecured creditors rather than making payments for the entire applicable commitment period, which would inevitably result in some payment to the Debtors' unsecured creditors. In this way it is linked to the failure of the Debtors' plans to comply with the applicable commitment period, an issue to which the Court now turns.

### B. Applicable Commitment Period

Section 1325(b)(1) provides that upon objection by the trustee or the holder of an allowed unsecured claim, the plan may not be confirmed unless the debtor pays all unsecured claims in full or the plan proposes to pay all the debtor's projected disposable income for the applicable commitment period to unsecured creditors. Debtors in both of these cases are below the applicable median income in the state of Missouri for families of similar sizes, meaning that their applicable commitment period is 36 months, according to § 1325(b)(4)(A)(i).

Although there has been much controversy over whether these provisions merely established a formula for a minimum payment to unsecured creditors in which the applicable commitment period was a multiplier or whether the applicable commitment period was a temporal period requiring debtors to be in Chapter 13 for a minimum period, that controversy was resolved in the Eighth Circuit by the decision of the Court of Appeals in *Coop v.*

*Frederickson (In re Frederickson)*, 545 F.3d 62 (8th Cir. 2008). A subsidiary debate also raged over whether the applicable commitment period is a temporal period in a case in which the debtor has negative disposable income, with decisions on both sides. This was the situation in *Frederickson* and the court specifically held the applicable commitment period is a temporal period notwithstanding that the debtor had negative disposable income based upon the applicable definition and the calculation required by Form 22C. The court defined the question before it as being whether an above-median debtor's plan must extend for five years or whether the bankruptcy court can confirm a shorter plan period when the debtor has negative disposable income according to the definition in § 1325(b)(2) and the calculation contained on Form 22C. The debtor argued that the applicable commitment period was not a temporal requirement if the debtor had negative disposable income. The Eighth Circuit specifically determined that that result did not comport with Congressional intent as reflected in BAPCPA and adopted the view that the applicable commitment period is a temporal requirement. *Frederickson*, 545 F.3d at 660. These cases are similar in that the Debtors have negative disposable income after deducting their Social Security income, which is clearly not part of current monthly income (and therefore not part of disposable income) based upon the exclusion of Social Security income in the definition. Whether Social Security income, although not part of disposable income, is nonetheless part of projected disposable income is an open question upon which the courts differ.[4] For the present purposes, the Court will assume that the Debtors lack projected

---

[4]*See In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010) (debtor's Social Security income had to be included in projected disposable income, based on *Lanning*); *contra, Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) (benefits received under Social Security Act should not be included in calculation of projected disposable income); *In re Welsh*, 440 B.R. 836 (Bankr. D. Mont. 2010) (Social Security retirement benefits are excluded from calculation of projected disposable income)*; In re Bartelini*, 2010 WL 2287559 (Bankr. N.D.N.Y.) (Social Security income not included in projected disposable income; Social Security income statutorily excluded from calculation).

disposable income as well.[5]

As with regard to the good faith issue discussed above, Debtors argue that the result should be different here because a substantial part of their income derives from Social Security which is not part of current monthly income and thus not part of disposable income. The Debtors rely in part on the case of *Carpenter v. Ries*, 614 F.3d 930 (8th Cir. 2010). In that case the court held that certain funds held by the debtor which were traceable to Social Security were not part of the bankruptcy estate based on 42 U.S.C. § 407. In this Court's judgment, *Carpenter* is not relevant to the question whether debtors whose income is comprised primarily or exclusively of Social Security must file plans which conform to the applicable commitment period. The issue in this case is not whether a particular asset is excluded from or exempt from the bankruptcy estate but whether the Debtors must remain in Chapter 13 for some minimum period of time.

Debtors also argue the holding in *Thompson* somehow affects the Court's determination. Once again, this Court disagrees. The issue in *Thompson* was whether it was appropriate to find a lack of good faith when the debtors had additional income which was not committed to the payment of unsecured creditors under the plan when that income was Social Security income. The issue here is not how much the Debtors must pay to their unsecured creditors, but how long they must remain in Chapter 13. Those are two separate questions.

The precise question before this Court was recently decided by the Tenth Circuit Bankruptcy Appellate Panel in *In re Timothy*, 442 B.R. 28 (10th Cir. B.A.P.). In that case,

---

[5]Whether *Frederickson* involved a situation in which the debtors had no *projected* disposable income is unclear. While the court states that the parties supposedly stipulated that Frederickson had no *projected* disposable income, *Frederickson*, 545 F.3d at 655, the court nonetheless observes that he had excess income over expenses as indicated on Schedules I and J and concludes he had actual projected disposable income. *Id.* at 660.

11

Chapter 13 debtors who had above-median income had negative disposable income pursuant to Form 22C, but positive net monthly income of $130.00 as reflected on their Schedules I and J. That income included debtor wife's Social Security income. Debtors proposed a plan with a payment in the amount of the net monthly income as shown on Schedules I and J, but with no minimum plan length, proposing to make payments only for so long as necessary to return the sum of $1,750.00 to their non-priority unsecured creditors. The Tenth Circuit Bankruptcy Appellate Panel held not only that the applicable commitment period is a temporal requirement, but that the result was no different merely because debtors' income derived substantially from Social Security. The court relied significantly on the Eighth Circuit's decision in *Frederickson* as well as the recent decision of the Eleventh Circuit Court of Appeals in *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010) (plain reading of § 1325(b)(4) requires a finding that "applicable commitment period" is a temporal term unless unsecured claims paid in full). Ultimately the court concluded that "the applicable commitment period for an above-median debtor is a minimum of five years, unless all unsecured creditors are paid in full prior thereto, regardless of whether part of his income is comprised of Social Security income." *Timothy*, 442 B.R. at 37.

More recently, the Sixth Circuit Court of Appeals addressed the same question and reached the same conclusion in *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011). In *Baud*, the Sixth Circuit first tackled the question whether the applicable commitment period is a multiplier or whether it is a temporal requirement. After reviewing the statutory framework and the competing precedents, the court concluded that for debtors with positive projected disposable income, the applicable commitment period is a temporal requirement. The court then considered

whether benefits received under the Social Security Act should be included in projected disposable income notwithstanding the fact that they are specifically excluded from current monthly income and thus also excluded from the calculation of disposable income. On that question, the court sided with those courts that have concluded that the specific exclusion of such income from the definition of current monthly income requires that it be likewise excluded from projected disposable income. As a result of this finding, the debtors in *Baud* had not only negative disposable income, but negative *projected* disposable income. The court then tackled the precise question arguably left open in *Frederickson* and concluded that there is no exception to the applicable commitment period for debtors with negative *projected* disposable income. In that case, the debtors' projected disposable income was negative because of the exclusion of Social Security income, the precise situation before the Court in these cases. The Court finds the rationale and holdings in *Timothy* and *Baud* consistent with the Eighth Circuit's ruling in *Frederickson* and persuasive, and will follow them.

Debtors finally argue that unsecured creditors are not likely to realize any significant return from below-median debtors regardless of the chapter under which they file or how long a Chapter 13 plan runs. Whether this is true and whether it is relevant to the Court's decision on the applicable commitment period is beside the point. One of the factors supporting the temporal interpretation of the applicable commitment period is that Debtors' circumstances may change. If Debtors experience positive change in their financial circumstances, and thus have a greater ability to pay, they may be subject to motions to modify their Chapter 13 plans under § 1329, which would benefit their unsecured creditors.

For all these reasons, the Court overrules the Debtors' objections to their own proposed

Chapter 13 plans and confirms its prior ruling on the trustee's motions to deny confirmation. The Debtors' prior plans were uncomfirmable having been filed in bad faith and in contravention of the disposable income commitment requirement contained in § 1325(b). A Chapter 13 plan which pays only the administrative expenses of the proceeding, primarily debtors' counsel's fees, and makes no payment to any creditor, secured or unsecured, violates the spirit and purpose of Chapter 13 and is not proposed in good faith. In addition, it was determined by the Eighth Circuit in *Frederickson* that the applicable commitment period is a temporal requirement, even in cases in which the debtors, although having actual net monthly income, have negative disposable income according to § 1325(b)(2) and Form 22C. The result is no different even if the debtors have negative projected disposable income by reason of the fact that a significant portion of their actual income derives from Social Security.

ENTERED this 3rd day of May 2011.

                                            /s/ Dennis R. Dow
                                  HONORABLE DENNIS R. DOW
                                  UNITED STATES BANKRUPTCY JUDGE

Copies to:

Rick Fink
Noel Bisges